PHILLIP HOMAN v. FRANKLIN COUNTY, Appellant.

90  185
s98  694
90  185
d110  259

90  185
137  647

90  185
e138  294

Defective County Bridge: PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE. A person who drives upon a bridge knowing it to be in an unsafe condition, can not recover for injuries caused by the falling of that bridge, if there was another safe and convenient passage, though he makes the attempt with care, and though the county neglected to prevent the use of the unsafe bridge, and though the public is, from its situation, invited to pass over it. (1)

MEASURE OF DAMAGES. While a general averment of damage through personal injury, in some cases, permits evidence of injury by inability to pursue a business, the rule has never been extended to injuries to the ability to conduct a farm, and, in the absence of special plea, at least, recovery by a farmer is limited to suffering, medical attendance and loss of time without reference to the profits of a farm. (2)

*Appeal from Wright District Court.*—HON. J. L. STEVENS, Judge.

THURSDAY, FEBRUARY 1, 1894.

ACTION for personal injuries. Judgment for plaintiff, and the defendant appeals.—*Reversed.*

*D. W. Dow*, County Attorney, and *W. D. Evans* for appellant.

*J. H. Scales* and *Nagle & Birdsall* for appellee.

GRANGER, C. J.—I. On the twelfth day of June, 1890, one of the bridges of defendant county, while plaintiff was passing over it, gave way, and fell to the stream below, in consequence of which the plaintiff was seriously injured; and this action is to recover damages thereby sustained. The following is a part of plaintiff's testimony: "I drove over that bridge a good many times during the year. I observed its condition as shaky. I noticed the bridge. It would shake —oscillate—when you passed over it. It did that morning. There was nothing stuck up to warn me from passing over it. Never saw anything of the kind stuck up there. Cross-examination: Before moving upon my present farm, I lived in Franklin county, by Whiteside's, close to this road, and about two miles from this bridge. I lived there three years. Was farming. This road comes into Ackley past the Revere House. I crossed this bridge a good many times. I noticed it was shaky for the last couple of years. I noticed the braces were out. They were down from the north, and the braces on the south and east were out a couple of inches. I noticed that every time I saw it, and I noticed the shaking every time I crossed it. It shook very much more than bridges ordinarily do, and more than a bridge ought to shake. I noticed that every time I crossed it. I was not fearful about crossing it. I thought it was safe. I never said anything to anybody about it. It shook more than it ought to. The braces were out at more than one place. That was the condition of the bridge that morning when I drove upon it. I am sure of that. I noticed that condition that morning before I drove on the bridge. I live on the county line road. There is a bridge across Beaver creek about a mile and a half east of where this bridge was, and south of my place.

There is a road leading to that bridge from my house, but there is not much travel, and I am not much acquainted that way."

Appellant asked the court to give an instruction as follows: "If you find from the evidence that the plaintiff, at the time he drove upon the bridge, knew its unsafe condition, and that it was imprudent for him to drive upon it at the time in consequence of its unsafe condition, then his own negligence contributed to the injury, and he can not recover, and your verdict must be for the defendant." The court refused it, and gave the following: "You are instructed that if there were no means taken by defendant to prevent the use of the bridge by the public, and from its location and situation the public were invited to pass over it, then the mere fact that plaintiff knew it was unsafe, even though it should appear that there was another safe and convenient way for him to reach his destination, would not render him guilty of contributory negligence if, in attempting to pass over it, he acted with ordinary care and caution, having regard for his own safety. In determining the question of whether he did exercise ordinary care in the matter you should consider all the evidence as to the condition of the bridge and the plaintiff's knowledge thereof, the circumstances under which he drove upon the bridge, and his load, whether there was another convenient and safe way he could have taken, and all other facts bearing upon the question, disclosed by the evidence, and then, if you find that the plaintiff, by his own negligence, contributed in any degree directly to the injury complained of, he can not recover in this case, even if you should find that the bridge was defectively constructed, or that the defendant negligently failed to keep it in repair, and that the plaintiff was injured in consequence thereof." It seems to us that the instruction asked states a correct rule of law. If a person about to drive on a bridge

knows it to be unsafe and knows it to be imprudent to drive thereon, and in the face of such knowledge he does drive on the bridge, he is negligent; and if he is injured in so doing his negligence contributes to his injury. The proposition seems to be without question, and it is the rule of the instruction asked.

The evidence we have quoted is such as to fully warrant the instruction. The instruction given presents, to quite an extent, a contrary rule. It, in effect, says that if a county neglects to adopt means to prevent the use of an unsafe bridge, and from its location and situation the public is invited to pass over it, a person, even though he knows it to be unsafe, and has another safe and convenient way to reach his destination, may yet, without being negligent, attempt to pass over it, if, in making the attempt, he acts with care and caution. In *Parkhill v. Town of Brighton*, 61 Iowa, 103, 15 N. W. Rep. 853, which was a case for personal injury on a sidewalk, the court below refused an instruction in these words: "If you find from the evidence that the plaintiff, at the time that she passed over the walk, knew that the walk was unsafe, and that it was imprudent to do so at that time, in consequence of the darkness, or for any other cause, and with this knowledge she persisted in passing over it, though there was another walk which she might have taken in going the direction in which she desired to go, then her own negligence contributed to the injury, and she can not recover." This court held that the instruction should have been given, and upon testimony much less conclusive than in this case. To our minds, the effect of the invitation to the public to cross or use a bridge that is really unsafe, and can not be prudently used, ceases in behalf of any person who actually knows of the unsafe condition. When such knowledge obtains, then the reason of the rule ceases, for the person does not then rely on the invitation or

apparent conditions as to safety, but he assumes the risk of using that which he actually knows to be unsuitable for use. Reasonable care and caution do not go hand in hand with one who thus assumes to act. A reasonably cautious and prudent man, with two ways open before him, one of which is safe and convenient and the other known to be so unsafe that it can not be prudently used, will not choose the latter. Such an act is one of venture, rather than prudence. The effect of giving one instruction and refusing the other was to deny to the defendant the benefit of the rule approved in the *Parkhill case;* that he was guilty of contributory negligence if he attempted to cross the bridge, knowing it to be unsafe; and that it was imprudent for him to do so when there was a safe and convenient way for his use. This holding is not against, but in harmony with, the rule in *Walker v. Decatur Co.*, 67 Iowa, 307, 25 N. W. Rep. 256.

II. On the question of damage the court permitted the plaintiff to testify to what was the income from his farm before his injuries. A few questions will indicate the rule of damage adopted:

"*Q.* With your appliances that you have there on the farm, what was you able to earn? *A.* Do you mean per year?

"*Q.* Per year or per day? *A.* I make a thousand dollars every year, besides the interest on that. (Defendant objects as incompetent, immaterial, and not responsive, and moves to strike the answer. Motion overruled, and defendant excepts.)

"*Q.* Are you able to do that since? (Same objection as last made. Objection overruled, and defendant excepts.)

"*Q.* About what difference is there in your earnings before and after per day? You made some estimate, have you not? (Objected to as incompetent,

immaterial, and irrelevant. Objection overruled, and defendant excepts.) *A.* About two dollars a day."

On cross-examination he made the following qualifications to such testimony:

"When I said I earned a thousand dollars a year, I meant that I made that off my farm. I could not earn a thousand dollars a year by work. I earn it on my farm.

"*Q.* What you mean to be understood as saying was that you could make one thousand dollars on your farm? *A.* Yes, sir.

"*Q.* Make your farm pay that? *A.* Yes, sir.

"*Q.* You don't mean to be understood as saying that you could earn three dollars a day working? *A.* No, sir; I mean on the farm.

"*Q.* All that you mean to say is that you could make your farm pay you one thousand dollars? *A.* Yes, sir; I could get that much out of it.

"*Q.* You could get it out of the crops? *A.* Yes, sir."

The averments of damage are: "That by reason of such injuries, suffering, and expenditure for medicine, medical services, and care, and loss of time, as hereinbefore mentioned and set forth, plaintiff has sustained damage in the sum of fifteen thousand dollars." Nothing "hereinbefore mentioned" refers to damage to plaintiff's business on his farm. The rule of general damage in cases of personal injury are those averred in the petition. The law presumes in such a case, from the nature of the injury, loss of time, suffering, and expenditure for medical attendance and care. These follow from a general averment of damages. Suth. Dam. [2 Ed.], section 421. This presumption sometimes extends to one's business, as in cases of incomes from professional services to which injury results, in which case the injured party is permitted to show what his business is, and what damage he has

sustained by reason of his inability to pursue the same. *Id.* We are not referred to a case holding, nor do we. think, that the rule of general damage for such injuries has ever been extended to injuries to the business of conducting a farm. Certainly the law does not presume any greater loss to such a business, from such an injury, than the value of the time lost to the owner in consequence of the injury. The profits of a farm depend upon many contingencies other than the personal services of the owner. It is not for us to determine that such damages may not result and be recoverable in the way of special damage, for the question, in that respect, is not before us. We are, however, clear that, under the issues, plaintiff was limited to the value of his time lost, without reference to the profits from his farm, and that the admission of the evidence showing damage to the business of his farm and the instruction permitting a recovery therefor are erroneous. For the errors suggested, the judgment is REVERSED.