THE STATE OF IOWA, Appellee, v. FENTON WHITNAH, Appellant.

**Murder in second degree:** INDICTMENT. An indictment which alleges' that defendant with a deadly weapon, willfully, deliberately, feloniously and with malice aforethought inflicted on the body of deceased a mortal wound of which he then and there died, charges murder in the second degree, although failing to allege in express terms the commission of an assault.

**Voluntary combat:** SELF-DEFENSE. Where two parties' prearrange a time and place to meet and settle a dispute by a fist fight, and one, without first offering to retreat, kills the other by the use of a deadly weapon, he cannot avail himself of the plea of self-defense.

**Evidence:** DECLARATION OF DECEDENT. Where the State contended that defendant and decedent, by prearrangement, engaged in a fight during which defendant killed the deceased by the use of a deadly weapon, the testimony of a witness that he was asked by deceased to accompany them and witness the fight was not

improperly admitted, as the conversation took place in the presence of defendant.

**Evidence in rebuttal.** A witness whose evidence is clearly rebuttal 4 may testify though he was not before the grand jury.

*Appeal from Page District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, DECEMBER 15, 1905.

THE defendant appeals from a conviction of the crime of manslaughter.— *Affirmed.*

*William Orr* and *W. E. Mitchell,* for appellant.

*Chas. W. Mullan,* Attorney General, and *L. De Graff,* Assistant Attorney General, for the State.

WEAVER, J.— I.   The appellant was accused of killing one Charles Middaugh, and the cause was submitted to the jury upon the theory that the indictment charges murder in the second degree.   It is now urged that the indictment does not charge murder in either degree, in that it does not in express terms allege that the accused committed an assault upon Middaugh, or that by said assault he took Middaugh's life.   Without extending the opinion to set out the indictment, we may say that, while the instrument is somewhat inartificially drawn, we find in it no fatal defect.   It does allege, in substance, that appellant, with a knife, a deadly weapon, willfully, deliberately, feloniously, and of his malice aforethought, did inflict upon the body of Middaugh a mortal wound, of which the said Middaugh then and there died, and this we think fairly includes all the elements necessary to constitute murder in the second degree.   Counsel cite us to no precedent for their contention, and we think none can be found which has arisen under our statute enacted to relieve the administration of the

*(margin note: 1. MURDER IN SECOND DE-GREE: indictment.)*

criminal law from the technicalities which formerly characterized it. Code, title 25, chapter 16.

II. It was the theory of the State, and there was evidence tending to show, that upon the evening of the homicide a party of men, including the appellant, met upon the streets of Clarinda, and that all were more or less under the influence of drink. A dispute arose between appellant and Middaugh over some trifling matter, but before any blow was struck some member of the party suggested that a fight there in town would result in arrests and fines, and it was at once arranged that they should go to some less exposed location and settle the matter. Taking one or more carriages, they drove out to a more secluded place near the cemetery, where Middaugh, having asked one of the bystanders to search him and having given up his overcoat and revolver, advanced upon appellant. A fight between them immediately ensued; Middaugh probably striking the first blow.

2. VOLUNTARY COMBAT: self-defense.

As a result of the first interchange of blows, both parties fell back a few feet out of striking distance, but at once readvanced and resumed the contest. In this momentary interval, if not before, the appellant had armed himself with an open pocket knife held by the handle; the open blade extending downward from the lower side of the fist. In the darkness this movement seems not to have been noticed by Middaugh or others of the party. As they met the second time, or but an instant later, the appellant struck his antagonist a downward blow with the knife, which entered the neck or throat of the latter near the shoulder blade, severing the jugular vein and subclavian artery. From the wound thus inflicted Middaugh died within a few minutes. It was the claim of the appellant in the court below that in whatever use he was shown to have made of the knife he acted in self-defense, under the reasonable apprehension and belief that deceased was armed with a dangerous weapon, and that the blow with the knife was necessary to save his own life.

On this phase of the case, after a careful explanation of the general rules as to the right of self-defense, stating them in a manner wholly favorable to the appellant, the trial court proceeded to say to the jury in substance that if, when they met upon the street, appellant and deceased mutually arranged or agreed to go to some place out of town to fight out their quarrel, if any, and in pursuance of such arrangement or understanding, and with the purpose of engaging in a fight with deceased, appellant did go to the appointed meeting, and did engage in a fight with deceased, then the acts of the defendant done or committed in the course of a fight so brought about could not be justified or excused on the ground of self-defense. This charge is assigned as error, because, it is said, that, even if it be true that appellant made an appointment to meet Middaugh and engage in a fist fight with him, yet if, when engaged in the contest, he discovered that Middaugh was armed with a dangerous weapon, he could properly use a weapon in defense if such act appeared to be necessary to save his own life. But this proposition cannot be upheld. The rule as stated by the trial court has been often affirmed and is well settled. *State v. Neely,* 20 Iowa, 115; *State v. Murdy,* 81 Iowa, 614; *King v. State,* 13 Tex. App. 277; *State v. Archer,* 69 Iowa, 422; *State v. Dillon,* 74 Iowa, 653. And see cases cited in 25 Am. & Eng. Ency. Law (2d Ed.) page 266, note 5.

It is true that, if after engaging in mutual combat one of the contesting parties in good faith withdraws therefrom and seeks to avoid further conflict, he is remitted to his right of self-defense, if his adversary pursues him or renews the assault; but a careful review of the record in the present case reveals no testimony or circumstance calling for an instruction to the jury upon this feature of the law. There is not the slightest intimation by the appellant or by any witness that having once entered the fight he expressed by word or act any desire to withdraw or to cease the struggle until the blow had been struck which took Middaugh's life.

It is possible that cases may be found in some jurisdictions which announce a rule as broad as that for which appellant contends, but it is clearly inconsistent with our former holdings, and is opposed to the great weight of authority. To affirm a rule by which a person may voluntarily arrange with another to fight out their differences with unarmed fists or otherwise, and then, having stabbed or shot his antagonist without first offering to withdraw from the contest, escape liability on the plea of self-defense, would inevitably tend to increase disorder, violence. and bloodshed. Much can be pardoned, or at least be extenuated, in men who offend against the law under the stress of sudden excitement and great provocation, but they who offend by prearrangement, who deliberately invite violence and blows, and voluntarily put themselves in places and under circumstances where the beastly and savage elements of human nature are unleashed from the restraints imposed by civilized society, have little claim to charitable consideration; and it is reasonable and proper that before they can avail themselves of a rule which excuses the taking of life in self-defense against those whom they have invited to such a contest that they must have withdrawn from all voluntary participation therein. If this rule sometimes works most serious results to those who disregard it, it is but another demonstration of the hardships which attend the way of the transgressor. Most of the authorities cited by the appellant in this connection are in entire harmony with the law as we have stated it.

III. The appellant denies that he made any arrangement or agreement to fight Middaugh, but insists that he went to the scene of the crime simply as a spectator or member of the party, and that the fight, if any was arranged for, was to be between Middaugh and some third person. According to his theory, the fight was forced upon him without prearrangement, and the attack was followed up so fiercely that he, thinking he saw a weapon in Middaugh's hand and reasonably apprehending danger to his own life, drew the

knife in self-defense. He does not admit striking the blow which killed Middaugh, but does admit as a witness that he struck him a downward blow with the open knife.

The claim of the defendant as to the origin and incidents of the fight were submitted to the jury under appropriate instructions, and, in view of the record as a whole, it is not at all strange that the jury refused to accept his version of the affair. It is doubtless true that the other members of the drunken party, which accompanied and abetted, or at least encouraged him to engage in the brutal enterprise, were each morally, if not legally, his equals in guilt, but that he struck the fatal blow and struck, not in self-defense, but in anger and vengeance, is made clear beyond all reasonable doubt. Viewing the charge of the court both as a whole and as distinct propositions of law applicable to the case on trial, we find nothing in it of which the appellant can justly complain. On the contrary, much care appears to have been taken to so state the rules as to give the appellant the full benefit of the law, and secure for the theory of his defense fair consideration at the hands of the jury.

IV. A witness who was present at the quarrel between the parties in town, and accompanied them to the place where the fight occurred, was permitted to say in testimony on part of the state: "I went out there because Middaugh told me to get into the buggy and go. Because they were going to have a racket out there; going to settle it." Complaint is made of this ruling. The witness appears simply to have stated what was said there in the presence of the entire party. The last clause is probably in the nature of a conclusion on his part, but, even if it should have been excluded, its admission was without prejudice. The statement does not couple the appellant's name with the proposed "settlement," and the defense itself proceeds on the theory that the party did go out there for the purpose of a

3. EVIDENCE: declaration of decedent.

fight between Middaugh and some person. The exception cannot be sustained.

Another witness for the state testified to an alleged threat made by appellant to witness against Middaugh, and designated the place as being a certain barber shop in Clar-

**4. EVIDENCE IN REBUTTAL.** inda where the witness was employed. Defendant, as a witness, denied the alleged conversation, and denied having been in the barber shop at all about the time referred to. On cross-examination he was asked if he did not go into that shop with a bruised face some time during the year 1901 or 1902, and replied that he did not. In rebuttal, the state was permitted to examine the proprietor of the shop as a witness, who testified to seeing appellant come into his place about the time indicated and talk with the employé above mentioned, but the witness did not profess to have heard or to repeat what was said. As the proprietor of the shop was not before the grand jury, and his name was not indorsed on the indictment, it is argued that his testimony should have been excluded. It was clearly rebuttal in character, and was not necessary that the name of the witness should appear upon the indictment. There was no error in permitting him to testify.

Other exceptions are urged to the instructions and to the rulings made in the course of the trial, but, in so far as they are not necessarily ruled by the conclusions stated, we find them to be without merit.

There is nothing in the record to justify us in disturbing the verdict of the jury; and the judgment appealed from is *affirmed*.