C. L. CHAPMAN, Appellee, v. PETER LAMP, Appellant.

TRIAL: Verdict—Passion and Prejudice. Even though appellant
1    can demonstrate that the verdict is, on *his* theory of the evidence, the result of passion and prejudice, yet he must fail if the record reveals substantial support for the verdict on appellee's theory of the evidence.

TRIAL: Excessive Verdict. Verdict for $700 for assault and bat-
2    tery sustained, as having substantial support in the evidence.

*Appeal from Monona District Court.*—GEORGE JEPSON, Judge.

OCTOBER 2, 1920.

C. L. CHAPMAN, plaintiff's decedent, has verdict and judgment as damages for an assault committed on him by defendant, Peter Lamp. Defendant appeals.—*Affirmed.*

*C. E. Underhill,* for appellant.

*Prichard & Prichard,* for appellee.

SALINGER, J.—I. The sole contention on this appeal is that, even if any damages were due for the assault charged, they were nominal damages only, and that the allowance of substantial damages by the jury is so unsupported by the evidence as that the verdict should be interfered with for being the result of passion and prejudice. To put it in the language of the brief, the appellant contends that (a)

1. TRIAL: verdict: passion and prejudice.

the damages were excessive; (b) the injuries received by plaintiff were slight, and of little consequence; (c) the assault was provoked and induced by an assault by plaintiff on defendant, and by vile and insulting language used by plaintiff toward defendant; and that (d) opprobrious and insulting language used at the time, and which caused the assault, may be shown and should be considered in mitigation of the damages,—wherefore, the verdict is contrary to the evidence, is not sustained by it, and is the result of passion and prejudice. The verdict awards $700.

II. There is no dispute over the law that governs the case. It is conceded (a) that, while words will not justify an assault, opprobrious or insulting language used by the assaulted party should be considered on mitigation; (b) that a challenge to combat will not defend an assault upon the challenger (*Lund v. Tyler*, 115 Iowa 236); and (c) conceded that, in protecting against assault, no more force is permissible than will reasonably work such protection. Nor is there any dispute over the scope of appellate review of a verdict on conflicting evidence.

III. Grant, for the sake of argument, that, if the jury believed the testimony given by the defense, aided, if you please, by some given by witnesses for the plaintiff, the verdict is too large. Grant even that, if the jury believed these, its verdict indicates passion and prejudice. But all that will, here, neither set aside or reduce the verdict, if the jury believed the testimony of plaintiff as a witness, or believed some of his witnesses, or believed both the plaintiff and his witnesses.

On giving credence to what was adduced for plaintiff, the jury could find this:

Plaintiff took his cattle to a railroad yard. They were taken into the scale yard, to be weighed. Defendant was there at work, sorting his own cattle. Defendant did something with the scale that made plaintiff feel he (plaintiff) should rebalance the scale, and he did so. In the scale yard, some of the stock of the plaintiff became wild, and plaintiff had trouble in separating them. It was a warm day,

and plaintiff was working very hard in handling the wild cattle, and he became excited. Then defendant commenced to tell him that he (plaintiff) was a crazy fool; that, if he knew anything about handling the cattle, he would have no trouble with them. Between wild cows on one side and this talk on the other, plaintiff got angry, and said something to defendant, but does not now remember what he said. At this time, defendant was sitting on the yard fence, and was outside the yard, and he responded to whatever plaintiff had said with the statement, "I won't take that off of nobody." Then he got off the fence, and came along the outside of the fence to the gate leading into the scale yard. Plaintiff had turned his horse, and had started to face his cattle. As defendant came through the gate into the scale yard, plaintiff turned his horse about. Plaintiff did not watch defendant very closely, when the latter was coming into the yard and walking toward plaintiff, and at this time, "had no idea of an assault." At this point, somebody hollered in a very wild, quick voice, "Look out;" and he immediately turned around in his saddle, to see if the wild cow was attacking him. The next he knew,—he does not know how,—defendant took hold of him, and he had plaintiff by both hands, stretched out at full length, with plaintiff's right foot on top of the saddle, and his left in the left-hand saddle stirrup. Plaintiff lost consciousness at that time, and didn't know what happened for a few moments. When he regained consciousness, he was lying on his left side, with his feet to the north, in exactly the opposite direction from which he was in when he became unconscious. He found defendant on top of him, and defendant had the cattle whip, which had been in plaintiff's right hand, in his (defendant's) right hand; and the first sight plaintiff got "with my eyes opened, was him with the cattle whip raised, as though he was going to whip me." Here plaintiff closed his eyes. As the blow didn't come, he opened them. Defendant "repeated it," and plaintiff started to get on his hands and knees. As he did so, he noticed his glasses and his case had fallen out on the ground. He got away from

defendant and picked these up, and returned them to his (plaintiff's) pocket. While he was stretched out in this manner, and reached over to get his glasses, defendant grabbed him by the throat and choked him. Plaintiff began to struggle, getting on his hands and knees, and commenced to try to straighten up; and then defendant got off of him entirely, and started out of the yard, and nothing further was said between them; and plaintiff denied that he ever struck defendant with a whip.

This testimony given by the plaintiff has much corroboration. It is equally true that testimony of others, including witnesses for plaintiff, greatly qualifies that of plaintiff; and true that all of it is met with contradiction and denial. But, as said, the jury could, as it evidently did, adopt the version of the plaintiff. And on this review, we cannot interfere with the verdict so founded.

IV. As to reducing the allowance. What is due by way of damages for a physical assault is inherently a jury question, and the award by the jury should not be disturbed lightly, especially where the amount of injury is in conflict.

2. TRIAL: excessive verdict.

The plaintiff is 62 years old. He has a position of some little standing. He testifies that he felt humiliated over this assault, and it caused him mental pain, and that there was an article about it printed in the Mapleton paper.

It is true that, immediately after the assault, they finished weighing the cattle, and that plaintiff rode out into the country, and that he had no medical aid. But if the jury believed the testimony, it could find as follows: When plaintiff got up, a bystander could see no bruises on him, because plaintiff was so bloody; that the blood was streaming out of his nose; that he rode out, with the blood running out of his nose and ear; that when he began to cool off in the evening, he had a terrible pain in his head, which lasted almost two weeks; that, part of the time, it was so severe that he thought he was going to lose his reason; that plaintiff found that the end of his nose and some of the bridge

were swollen; that the bone part was very sore, and continued so for several days; that, when he arose on the morning next following, he hadn't slept much during the night, because his head pained him so; that, as he started out to the barn, it felt as though something broke loose in his head, and a quantity of blood gushed out of his nose, and that his headache was not so severe after that; that, for several days, he could not remember things well,—there would be times he couldn't remember them; and that his jaw has been sore ever since.

We are not warranted in either setting aside or reducing the verdict.—*Affirmed.*

Weaver, C. J., Evans and Preston, JJ., concur.