HARRY SCHWALLER, Appellee, v. VERN McFARLAND, Appellant.

No. 45007.

406

MAY 7, 1940.

Lee Soltow, for appellee.

George W. Dresselhuis, for appellant.

STIGER, J.—About 10 o'clock on the night of January 15, 1938, plaintiff was having lunch in a restaurant in Odebolt. Defendant entered the restaurant and tried to sell plaintiff a dance ticket. The refusal to buy a ticket started an argument which became so violent that the proprietor ordered them

from the restaurant. Several witnesses, including the proprietor, testified they were fighting in the restaurant. Before they left the restaurant it was agreed they would go a mile east of town and finish the fight. Defendant and a friend drove to the designated place, and, after waiting a short time for plaintiff, returned to Odebolt. Plaintiff states that he did not keep the engagement because he was afraid "they [defendant and his companion] were going to beat —— out of me." In a short time the parties met again in front of a poolhall in Odebolt. While each claimed the other was the challenger, the record shows that a challenge to combat was given and accepted and the principals repaired to the chosen arena—a crossroad one mile east of Odebolt. Defendant, the winner, arrived first with four companions, and plaintiff, who did not hurry to the battleground, possibly because of a premonition of the evil that was to befall him, arrived sometime later. Plaintiff was no match for defendant, being knocked down at least four or five times and receiving severe injuries.

Plaintiff suffered a compound fracture of his jaw and other injuries. He was in a hospital over 10 weeks. Dr. Anneberg testified:

"I examined the jaw this morning. Jaw much better than early in September. It isn't fully recovered yet. Will take several more months. It will never be what it was before it was broken. There is some deformity: For practical purposes it ultimately will be as useable as it ever was. Infection is gone."

I. Counsel concede that in a case of mutual combat consent is no defense in an action by either combatant to recover damages for injuries inflicted by the other, such fighting being unlawful. The rule is stated in Lund v. Tyler, 115 Iowa 236, 237, 88 N. W. 333, as follows:

"* * * the principal complaint of appellant is of the refusal of the trial court to instruct that if plaintiff, by his actions and words, invited the fight in which he was injured,

he cannot recover damages for such injuries. There seems to be some authority for such a proposition, * * *. But the weight of authority is that, where a combat involves a breach of the peace, the mutual consent of the parties thereto is to be regarded as unlawful, and as not depriving the injured party, or, for that matter, each injured party, from recovering damages for injuries received from the unlawful acts of the other.''

See, also, Chapman v. Lamp, 189 Iowa 771, 179 N. W. 50; Shipley v. Edwards, 87 Iowa 310, 54 N. W. 151.

The trial court correctly stated the law to the jury in instruction No. 11. Defendant predicates error on the remainder of the instruction, which reads:

''Applying this rule of law to this case you are told that it appears from the undisputed evidence that the encounter between the plaintiff and the defendant at a point on the public highway one mile east of Odebolt, Iowa, on the night of January 15, 1938, was an encounter which involved a breach of the peace and that the plaintiff and the defendant mutually consented to such encounter. And it further appears from the undisputed evidence that in said encounter the defendant did commit an assault and battery upon the person of the plaintiff unlawfully.

''It will, therefore, be the duty of the jury to return a verdict for the plaintiff and against the defendant in some amount.''

Defendant's contention is that the court erred in telling the jury that the undisputed evidence established that the parties mutually consented to the encounter. He claims the jury could have found from the testimony of defendant that he did not expect, desire or consent to fight, and, if he did so consent, that he withdrew his consent prior to inflicting severe injuries on plaintiff.

The trial court was right in its view of the evidence.

We will set out some of the testimony of the defendant in narrative form:

"When we were in Smith's Restaurant, Smith said 'You fellows can't argue or fight in here.' I said, 'All right.' Harry [plaintiff] said to me 'If you aren't afraid of me, come out a mile east of town.' I said 'Okay, if that is the way you feel about it.' Marvin Friday and I then went a mile east of town. On the way out I told Marvin 'I don't believe he will come out.' As Harry did not come out we went back to town. Harry came up to me and said, 'Where have you been, I have been looking for you?' I said, 'I have been out east of town where you wanted me to go.' He said, 'If you are not a coward come on out.' I said, 'Of course, if that is the way you feel about it, I will go.' I turned and started to my car and the other fellows said 'We are going along.' We all piled in my car and went a mile east of town. I parked on the north side of the road and he parked on the south side. I got out of my car and walked over to his car to see if I could not argue him out of it. I still didn't think he would fight. I said, 'Harry, your car is headed for the highway, go .on home.' He replied 'No, I am going to fight you.' I said 'All right get out of your car.' He started to get out of his car and Zimmerman·hollered to me to look- out and I said 'I am all ready watching because Harry made the remark to me one time if he ever got into a fight and could get hold of anything he was going to hit them.' I started to take him out of his car. I took hold of him and said 'Get out if you want to fight.' He stepped out and swung at me and missed. I swung and hit him. I was standing there waiting. I said, 'Harry, you had better quit.' He replied, 'I will not quit', and came at me. I protected myself and hit him. He went down and came back again. I never went after him. I only hit him to protect myself. I side-stepped him a couple of times and he went down on his face. I thought he would quit. The first thing I knew he hit me on the ear and I turned and there was Harry. I said, 'If that is the way you feel about it,

take this,' and I let him have it. He went down for the last time. The boys picked him up and put him in the car.''

On cross-examination, he said:

''When I said 'I side-stepped Harry' that was in the middle of the fight. I did not make any attempt to walk away. I waited for him to get up and come at me again. When at Smith's Restaurant it was Harry that wanted to fight and I accepted the proposal. It was Harry who made the second proposal to go a mile east of town to fight. I accepted the second proposal. The first time I went out there I went there to get away from him. I didn't think he would come out there. The second time I went out there to take him up on his challenge. I went out there to finish up the argument if he would come out. I didn't think there was going to be a fight when I walked across the road to his car. I reached in before Harry got out and took hold of him after Zimmerman hollered. I didn't pull him out of his car but I might have helped him out. I thought he was going to strike me with something. I had that in mind. Zimmerman didn't have to tell me. When I was hitting him and knocking him down I didn't realize how hard I was hitting him. I was protecting myself.''

While defendant might have been of the opinion that plaintiff would not fight him at the crossroad and stated ''I didn't go out there to fight because I didn't think he would fight,'' it is very apparent from his testimony that each time he went to the selected battle ground it was for the sole purpose of fighting plaintiff if he did not back down.

After the fight had started defendant's statement to plaintiff that ''he had better quit'' was not a withdrawal from the voluntary encounter or a withdrawal of his consent to fight. Obviously defendant had no intention of being the first contestant to quit. Defendant was not defending or protecting himself from an attack made on him by plaintiff. He did not go out to the crossroad to protect himself from plaintiff but went out to fight him. His defense in this voluntary combat

was as skillful as his offense was powerful, plaintiff not being able to strike one effective blow.

When plaintiff refused to quit they voluntarily continued this mutual combat, its mutual character being uninterrupted from the beginning of the fight to the end.

All of the spectators at the affray testified that they went out to the crossroad to "see the fight." The only conclusion that can reasonably be drawn from the evidence, including testimony of defendant, is that there was a mutual combat.

■ II. As defendant at all times voluntarily participated in the encounter for the purpose of fighting and not in his own defense, his complaint that the court erred in failing to instruct the jury relative to his right of self-defense is without merit, self-defense under such circumstances not being available to defendant as a defense. State v. Whitnah, 129 Iowa 211, 105 N. W. 432; State v. Dillon, 74 Iowa 653, 38 N. W. 525; Shipley v. Edwards, 87 Iowa 310, 54 N. W. 151.

■ III. In instruction No. 9 the court told the jury with reference to damages growing out of future disability of plaintiff that "if you find that his injuries will continue you will consider the probable duration thereof, and allow him for such future medical and hospital attendance and services, and for such future disability to perform labor and impairment of earning capacity, and for such future pain and suffering as the plaintiff is reasonably certain to suffer as the direct, proximate result of his injuries."

Defendant objects to this instruction on the ground that plaintiff's petition did not contain an allegation for such damages and there was no basis therefor in the evidence.

In defendant's motion for new trial the only objection made to this instruction was that the petition did not ask for such damages.

The petition alleged that the plaintiff was greatly injured, his face being bruised and cut and his jaw fractured and asked damages for permanent injury. It also alleged that plaintiff had incurred damages for medical and hospital expense

in the amount of $228.45, damages for loss of time in the amount of $450 and had suffered damages for pain and suffering in the amount of $3,000. There was a general allegation for damages. These allegations of the seriousness and permanency of plaintiff's injuries were sufficient to advise defendant that such future damages would be likely to result from the injuries inflicted upon him and it was not necessary for plaintiff to specifically plead such elements of damage. Kellar v. Dodds, 224 Iowa 935, 277 N. W. 467; Palmer v. Waterloo, 138 Iowa 296, 115 N. W. 1017; Breen v. Railway, 159 Iowa 537, 141 N. W. 410, 249 U. S. 604; Willis v. Schertz, 188 Iowa 712, 175 N. W. 321; Homan v. Franklin County, 90 Iowa 185, 57 N. W. 703.

The petition was sufficient to entitle plaintiff to have this issue submitted to the jury.

Finding no error in the case, it is affirmed.—Affirmed.

HAMILTON, C. J., and MITCHELL, MILLER, SAGER, HALE, OLIVER, BLISS, and RICHARDS, JJ., concur.