## J. W. BREEN, Appellee, v. IOWA CENTRAL RAILWAY COMPANY, Appellant.

**Master and servant:** PROMISE TO REPAIR MACHINERY: EVIDENCE. A promise to repair defective machinery need not be in express words. It may be implied from language more or less indefinite. In the instant case the question of whether there was such a promise to repair the railway engine with which plaintiff was injured, as to justify reliance thereon, was for the jury.

**Same:** ASSUMPTION OF RISK. Whether plaintiff continued to use the engine for such a length of time after the promise of repair, as to charge him with assumption of the risk, was also for the jury.

**Same:** DEFECTIVE MACHINERY: ASSUMPTION OF RISK: INSTRUCTION. Where it appeared that plaintiff, who was a railway engineer, inspected the engine which subsequently broke causing his injury, and observed its defective condition but discovered nothing which he had not known before, or which he had not reported to the foreman of the roundhouse, an instruction that if the apparent condition of the engine was such as to indicate imminent peril from its further use plaintiff could not recover was sufficient.

**Personal injury:** ASSIGNMENT OF CAUSE OF ACTION: WHAT INCLUDED. The assignment of a cause of action for a personal injury of all rights, title and interest therein, with authority to the assignee to prosecute an action for the recovery of damages on account of the wrongful and negligent acts of defendant, carried with it the assignor's full cause of action, including the right of recovery for pain and suffering past, present and future.

**Same:** EVIDENCE OF PAIN AND SUFFERING: SUFFICIENCY OF PETITION. The petition in a personal injury action alleging that plaintiff received serious and permanent injuries, incapacitating him from performing any manual labor, is sufficient to authorize the admission of evidence of pain and suffering, in the absence of a motion for a more specific statement.

**Same:** MEASURE OF DAMAGES: INSTRUCTION. Where an instruction is not in itself erroneous error cannot be predicated on its lack of specification, in the absence of a request for a more specific instruction.

Thus, in a personal injury action, the instruction to allow such sum as in their judgment would fairly compensate the plaintiff for the injury sustained, while not as specific as it might well have been, was not in conflict with the true rule for the measure of damages in such cases.

**Same:** EXPECTANCY OF LIFE: EVIDENCE. Evidence of the life expectancy of one injured having reference to the date of the injury rather than the date of trial was not prejudicial to defendant, where the result of the evidence was to prove a shorter period than if it had related to the time of trial.

**Same:** EVIDENCE: ADMISSIONS: WAIVER OF OBJECTION. Where an employer's physician called at plaintiff's home, several months after he had ceased treating plaintiff, for the purpose of treating another patient, evidence of a conversation between plaintiff and the physician regarding an operation for his injury and advice of the physician that an operation might not be of any benefit, was erroneous and prejudicial to the defendant; and the fact that defendant subsequently proved that an operation would not have the effect contended for in the evidence did not render it admissible in rebuttal; nor did the fact that defendant offered evidence to contradict the improper evidence waive the objection to it.

**Same:** DAMAGES: LOSS OF FUTURE EARNING CAPACITY: INSTRUCTION. Damages for loss of future earning capacity should be limited by the court in its instructions to such future loss as the plaintiff is reasonably certain to suffer.

*Appeal from Marshall District Court—*HON. CLARENCE NICHOLS, Judge.

WEDNESDAY, MAY 14 1913.

ACTION for damages for personal injuries. The plaintiff holds his cause of action by assignment from Miles Kelleher, the injured person. Kelleher was an engineer in the employment of the defendant. He was injured on September 29, 1908, while engaged in his duties as engineer, by the breaking of a side rod of the engine. There was a trial to a jury, and verdict and judgment for the plaintiff. Defendant appeals. —*Reversed.*

*W. H. Bremmer,* General Solicitor, and *Boardman &
Lawrence,* for appellant.

*Wade, Dutcher & Davis* and *P. W. Tourtellot,* for
appellee.

EVANS, J.—The general nature of the negligence charged
was that the defendant furnished Kelleher an engine which
was old and worn and in a bad state of repair. Lack of proper
inspection was also charged. It was also averred that the
wheels had become flattened, and that the side bar was worn
and out of repair, and that such side bar received an extra
strain because of the dilapidated condition of the engine
in other respects; that he received serious and permanent
injuries by reason of such accident, the principal one being
the breaking of his knee-cap; that he was totally incapacitated
from earning any money. The defenses pleaded were a general
denial, contributory negligence, and assumption of risk.
By way of reply the plaintiff pleaded that shortly prior to
the accident he had reported to the defendant company the
dilapidated condition of such engine, and that the defendant
through its roundhouse foreman had promised to repair the
same. The method of the accident was that the side rod broke
and the revolving parts crushed the cab where Kelleher was
sitting. He was seriously injured. His permanent injury
consists in a broken kneecap, the parts of which have never
united except by a fibrous union. The evidence was sufficient
to justify a finding by the jury that he was wholly incapaci-
tated by the injury from following his occupation as an engi-
neer. He is, however, by no means wholly deprived of the
use of his limb, but its strength is much affected.

I. It is one of the contentions of the defendant here that
there should have been a directed verdict in its favor on the
ground of assumption of risk. The evidence on behalf of the
plaintiff tended to show that the engine in question had been
in use since 1882 and that it was in need of general repair.

The defects most readily observable appeared to be flattened wheels and worn bearings, so that the engine pounded and jerked in its work and made hard "riding" for the engineer and fireman. Kelleher used this engine in his turn, which was once in seven days. About a month before the accident, he complained of its condition to the roundhouse foreman upon whom devolved the duty of repair. The foreman promised to repair the same as the "first job" after he could get a man competent to do it. He also stated that he had no man at that particular time who was competent. Kelleher used the engine two or three times after such complaint. Its run was from Marshalltown to Albia and return. It is contended by appellant that the promise of repair was too indefinite to justify reliance thereon. It is also urged that the time elapsed after the promise and before the accident was so great as to indicate conclusively that Kelleher was not relying upon such promise, but that he was voluntarily assuming all risk. It is further urged, also, that Kelleher inspected the engine at Albia immediately before the return trip during which the accident resulted, and that he discovered its condition at that time, and that he made no complaint and no report. It is argued, therefore, that he had better knowledge at that time of the condition of the engine than any other person, and that he necessarily assumed the risk in his further use thereof. These questions were all submitted to the jury as questions of fact under an instruction which is conceded by appellant to be correct as an abstract statement of the law. We think the appellant has no just ground of complaint at this point.

What is a sufficient promise to justify reliance thereon by the servant, is frequently a question of fact. It has often been held that, even though there be no express promise to repair, a promise may nevertheless be implied from language more or less indefinite. *Stoutenburgh v. Dow*, 82 Iowa, 184; *Pieart v. Railway Co.*, 82 Iowa, 148; *Kroy v. Railway Co.*, 32 Iowa, 365; *Huggard v. Glucose Co.*, 132 Iowa, 733.

1. MASTER AND SERVANT: promise to repair machinery: evidence.

Whether Kelleher continued to use the engine an unrea-

sonable length of time was also a question for the jury. *Belair
v. Railway Co.*, 43 Iowa, 662; *Foster v. Rail-
way Co.*, 127 Iowa, 84; *Taylor v. Star Co.*, 110
Iowa, 41.

2. SAME: as-
   sumption of
   risk.

Appellant, however, places its greatest emphasis upon
Kelleher's inspection at Albia immediately before he started
upon his return trip. If upon this inspection Kelleher had
discovered some new or particular defect sufficient to indicate
imminent peril in the continued use of the engine, a different
question would be involved.

Kelleher did inspect his engine before starting, as was
his duty to do, and did observe its general defective condition.
It does not appear that he discovered any-
thing which he did not know before or
anything which he had not previously reported
to the roundhouse foreman. He knew the con-
dition of the engine after the inspection, in the same sense
that he knew it before. If its apparent condition was such
as to indicate imminent peril from its further use, then the
plaintiff could not recover, and the trial court so instructed.
We think this ground was properly covered by the instruc-
tion, and that the defendant was not entitled to a peremptory
instruction thereon.

3. SAME: defec-
   tive machin-
   ery: assump-
   tion of risk:
   instruction.

It is also argued by appellant that there was no evidence
that the roundhouse foreman at Marshalltown was the proper
person to whom complaint of the condition of the engine
should be made. Kelleher so testified, and his testimony is
undisputed.

II. Under the instructions of the trial court, the jury
were permitted to allow damages for pain and suffering past,
present, and future. It is urged that this was erroneous on
two grounds: (1) Because such element of damage was not
covered by the assignment of the cause of action from Kel-
leher to the plaintiff; and (2) because no claim was made in
the petition for damages on that ground.

Turning first to the assignment of the cause of action
by Kelleher to the plaintiff, it is true that it does not purport

in terms to specify damages for pain and suffering. It does

purport to assign to the plaintiff "my cause

**4. PERSONAL IN-**
**JURY: assign-**
**ment of cause**
**of action:**
**what included.**

of action against the Iowa Central Railway Company based upon substantially the following facts": Here follows therein a recital of the alleged facts out of which such alleged cause of action arose. The concluding clause of the assignment is as follows: "And I hereby assign unto said J. W. Breen all my rights, title and interest in said claim and cause of action, and confer upon him full power and authority to commence any proceedings, suits or actions which may be necessary for recovery of damages for the said wrongful and negligent acts of said company; he to have as full power in all respects thereto as I myself would have." We think such assignment was sufficient in its terms to carry to the plaintiff Kelleher's full cause of action, if any, arising out of such accident.

The petition did not in terms specify pain and suffering as one of the elements of damage. It did allege that Kelleher received "serious and permanent injuries which totally inca-

pacitated him from performing any manual

**5. SAME: evi-**
**dence of pain**
**and suffering:**
**sufficiency of**
**petition.**

labor." It is undoubtedly true that the plaintiff could have been required to specify in his petition the elements of damage claimed. But no such requirement was made by motion or otherwise. Under our previous holdings, evidence of pain and suffering was admissible under these allegations, and the plaintiff was entitled to have the same submitted to the jury. *Palmer v. Waterloo,* 138 Iowa, 300; *Evans v. Elwood,* 123 Iowa, 96; *Bailey v. Centerville,* 108 Iowa, 26.

The further complaint is made of the instructions as to measure of damage in that the recovery for future damage "was not limited to present value." The language of the

instruction given by the trial court is quite

**6. SAME: meas-**
**ure of dam-**
**ages: instruc-**
**tion.**

general at this point and is as follows: "Such a sum as in your judgment will be fair compensation for the injuries which said Kelleher sustained." That

the rule or measure of damage contended for by appellant at this point is the correct one may be conceded. *Dougherty v. Railway Co.*, 137 Iowa, 257; *Williams v. Clark County*, 143 Iowa, 330.

It is not claimed that the instruction of the trial court contradicts this rule. It only lacks in specification. This question was considered by us in *Greenway v. Taylor County*, 144 Iowa, 332, where substantially the same language was used. In that case we held that the instruction in itself was not erroneous, and that, in the absence of a request for more specific instruction, error could not be predicated upon its lack of specification. We think that case must be deemed controlling here, although we deem it a much better practice for the trial courts to be specific in their instructions at this point. So we said in the *Greenway* case and in *Williams v. Clark County, supra.*

III. Kelleher was fifty-six years of age at the time of the accident and sixty years of age at time of the trial. For the purpose of proving his expectancy, the plaintiff introduced that part of the life tables showing the expectancy of a man fifty-six years of age; such expectancy appearing as a fraction less than seventeen years. Objection was made to this offer as immaterial, irrelevant, and incompetent, and such objection was overruled. It is now urged that the expectancy of Kelleher should have been shown as from the date of the trial and as that of a man of sixty years and not as of the date of the injury. This particular point does not appear to have been presented to the consideration of the trial court. An instruction was requested by the defendant advising the jury as to what consideration should be given by them to the life tables so introduced. This requested instruction was given by the trial court. There is fair reason for saying that resort needs to be had to life- tables, only for determining the *future* expectancy of life of a person. What is already past is secure and certain and has no need of ascertainment by the law of

7. SAME: expectancy of life: evidence.

probabilities. We find no case where this particular question is considered in this form. It is quite usual to show the expectancy of life by the life tables as of the date of the injury. *Trott v. Railway*, 115 Iowa, 80; *Croft v. Railway*, 134 Iowa, 411; *Pearl v. Railway*, 115 Iowa, 535. We find no case where objection has ever been made on the ground now urged on this appeal. It is clear, however, that no ground of complaint is furnished here to the *defendant*. The rule contended for by the defendant would be less advantageous to it than the other. The years of expectancy of life at sixty, plus four years, makes a longer period than the years of expectancy at fifty-six. In proving the expectancy of Kelleher at fifty-six as of the date of the injury, the plaintiff therefore proved a shorter period·than if he had adopted the rule contended for now by the defendant. It is sufficient to say therefore that the defendant in such a case as this can suffer no prejudice from the rule adopted by the plaintiff.

IV. It appears from the record that Kelleher was attended for his injuries by Dr. Mighell, who was the defendant's surgeon at Marshalltown. This doctor continued in his treatment of Kelleher as a patient until December or January following. In July following he called at the home of Kelleher to treat another patient. On the trial of this case, Kelleher was permitted to testify to an alleged conversation with Dr. Mighell on such occasion. This was strenuously objected to by the defendant, and error is assigned because of the admission of such testimony. The record at this point, as set out by appellee in his amended abstract, is as follows:

8. SAME: evidence: admissions: waiver of objection.

Q. Did you have any advise in regard to an operation on this knee? (Objected to as calling for hearsay). Q. I mean professional advice. (Same objection. Overruled, and defendant excepts). A. Yes. sir. Q. With whom? A. The company surgeon and Dr. Boucher. Q. And who was the company surgeon? A. Dr. Mighell. Q. What did Dr Mighell tell you or advise you in regard to an operation on this knee?

(Objected to as incompetent and calling for hearsay, being a statement not binding upon this defendant and not the best evidence and not within the issues. Overruled, and defendant excepts). A. He came down to my house, I think, along in July after I got hurt, and he says, 'I have got orders to come down and examine your knee by the company.' He says, 'I believe they are going to settle with you.' I says, 'All right, you can examine it any time you want to.' Well, he went to work and examined it. 'Now,' he says, 'they want me to take you to the hospital and cut that open again and wire it.' I says, 'Doctor, will it be any better if you do that than it is now?' He says, 'I don't know,' and furthermore he says, 'I would not advise you to do it because the chances of infection in the knee is something very serious.' Q. What else was said then? A. He says, 'If it heals up or the bones would grow together the knee would be stronger.' I says, 'Will you guarantee the knee will be any better than it is if you do operate on it?' And he says: 'No, sir; I won't.' Q. What, if anything, did you ask him in regard to it? (Defendant moves to strike out all the answer of the witness as incompetent, hearsay, and including statements which are not binding upon this defendant and not the best evidence. Particularly move to strike out all the statement with reference to what Mr. Kelleher said to the doctor, being hearsay and a self-serving declaration). Judge Wade: He is simply asking for advice as to what was best to do with the leg. There is some of that answer there I have no—might possibly be objected to as to the conversation between the doctor and him about the leg. I do not see how that— The Court: I cannot go through the answer and pick out the parts. The motion to strike is overruled, and defendant excepts. Q. What, if anything, did you say to him about the operation as to cutting the bone or anything of that kind? (Objected to for the same reason, including all of the objections made in the motion to strike. Overruled, and defendant excepts). A. Well, I said to him, 'You will have to cut a piece off of the side there to get a fresh joint to wire together.' I said, 'Will that have a tendency to shorten the leg, the cutting of it?' He says, 'It will.' (Defendant moves to strike out the answer for the reasons stated in the motion to strike the previous answer. Overruled, and defendant excepts). Q. You haven't had any such operation on your

leg? A. No, sir. Q. Did you have the advice, you say, of another doctor on the subject? A. Yes, sir. Q. State whether or not he advised an operation or not to operate? (Objected to as incompetent and not the best evidence, calling for hearsay and a conclusion and opinion of the witness). The Court: I will let him say whether he was or was not advised without going into conversation. (Objection overruled and defendant excepts). Q. What doctor was it? A. Dr. Boucher. Q. Is he a practicing physician and surgeon in Marshalltown here? A. Yes, sir; he is the county coroner. Q. Did he make an examination of the leg? A. Yes, sir. Q. State whether or not he advised an operation? A. He advised me not to. (Same objection and defendant moves to strike out the answer for all the reasons stated in the motion to strike. Overruled, and defendant excepts).

Mrs. Kelleher testified substantially to the same effect and over the same objections.

It is urged by appellant that this testimony was hearsay and incompetent on many grounds and that it was highly prejudicial. The only argument urged by the appellee in support of the admission of this testimony is that it was given in explanation of the conduct of Kelleher in refusing to submit to an operation and that it was given to repel a claim of bad faith on his part in refusing to submit to such operation. Appellee has failed to point out to us that part of the record upon which this argument is based. We have read every line of the record in search of support for the argument. We are unable to find an intimation by the defendant or any of its witnesses of bad faith on the part of Kelleher. There was no such question apparent in the case either in the pleadings or in the testimony. The plaintiff first injected it into the case in the opening statement of his counsel to the jury before the taking of evidence. This was followed by the testimony of Mr. and Mrs. Kelleher as a part of the main case. The defendant met such testimony by the testimony of Dr. Mighell wherein he denied the substantial part of such alleged conversation and denied that

such alleged operation would have the effect depicted in such alleged conversation. To this latter proposition other surgeons were also called as witnesses.

The contention of appellee is that this testimony on behalf of defendant, if it had been given in the first instance, would have rendered the testimony of Kelleher and his wife admissible in rebuttal. We do not think the argument is available. Such evidence was not given on behalf of the defendant in the first instance. It was purely defensive. The evidence so introduced by the plaintiff, if erroneous, was highly prejudicial. *Elzig v. Bales,* 135 Iowa, 208; *Christopherson v. Railway Co.,* 135 Iowa, 417.

Such evidence having been admitted, the defendant waived nothing by contradicting it. The evidence was calculated to arouse the hostility and to disturb the candid judgment of the jury. This of itself would not exclude it if it had any legitimate purpose or function in the case. But the record discloses no other purpose for it. We see no escape from the conclusion that the defendant is entitled to a new trial because thereof. *Elzig v. Bales, supra.*

V. Some other alleged errors are assigned, but they are of such a nature that they are not likely to arise upon a

9. SAME: damages: loss of future earning capacity: instruction. retrial. In instructing the jury on loss of future earning capacity as an element of damage, the trial court failed to confine the consideration of the jury to such future loss of earning capacity as Kelleher was "reasonably certain to suffer." We are not prepared to say that the instruction was not sufficient in its terms to cover this objection, but the question is not free from doubt. It is sufficient to call attention to it for the consideration of the trial court upon retrial.

It is also urged that the verdict was excessive. We deem it best not to enter upon a discussion of this question at this time in view of the necessity of a retrial upon other grounds. The verdict was large and was doubtless affected to a greater or less degree by the admission of the testimony referred to

in the preceding division. There may be additional testimony bearing upon the measure of damage at the next trial. We think the. question should be left open, unprejudiced by any present discussion which could not be decisive.

For the error indicated, the judgment below must be *Reversed.*