LYDIA M. ARENSON, appellee, v. PERRY BUTTERWORTH, appellant.

No. 48072.

(Reported in 54 N.W.2d 557)

JULY 28, 1952.

Loth & Melton, of Fort Dodge, for appellant.

Bradshaw & Crawford, of Fort Dodge, for appellee.

GARFIELD, J.—Central Avenue in the city of Fort Dodge runs about east and west. Twelfth Street runs about north and south at the east end of Central Avenue. Nearly all eastbound traffic on Central turns either south or north on Twelfth Street. A narrow gravel driveway runs on east from Twelfth but it is used infrequently. For practical purposes it is a "T" intersection with Twelfth forming the top of the "T" and Central the base. There are traffic control signals—stop and go lights—at the intersection.

Plaintiff, age sixty-nine, walked north on the sidewalk on the east side of Twelfth to the northeast corner of the intersection. There she says she waited for a green light so she could cross Twelfth and when the light turned green she started across. She testifies she looked both ways for traffic and saw none except a car coming east on Central between Eleventh (a short block west of Twelfth) and Twelfth. Defendant was driving east on Central, turned north (left) on Twelfth, and his left front fender struck plaintiff when she was a little more than half way across Twelfth.

Defendant and another witness testify defendant reached Twelfth when the light was red, stopped and waited for it to turn green before starting his left turn. Plaintiff, however, says the light was green when defendant reached the intersection and he made no such stop. Defendant and two other witnesses testify he gave a hand signal to indicate a left turn. We will refer to other evidence later.

The trial resulted in verdict and judgment for plaintiff for $2000 from which defendant has appealed. It is claimed some

instructions to the jury are erroneous, there is insufficient evidence to warrant submission of some grounds of negligence and the damages are excessive.

I. Instruction 8 states a pedestrian at an intersection controlled by traffic signals, while proceeding in accordance with the signals, in any marked or unmarked crosswalk, has the right of way over vehicular traffic. Defendant's requested instruction II asserts plaintiff had no preferred right of way over a vehicle turning left as permitted by a traffic signal, that both pedestrian and motorist under such circumstances must exercise due care without either having any preference over the other in the matter of right of way.

Defendant objected to instruction 8 for the reasons suggested in requested instruction H, which was refused, and also because it should have stated that if plaintiff stopped with the apparent intention of permitting defendant to proceed, she relinquished her right of way. Requested instruction H was properly refused and the ground of exception to instruction 8 based thereon is not good.

Section 321.257 (1), Code, 1950, provides that a green light shall indicate:

"Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection *at the time such signal is exhibited.*

"*Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.*" (Italics added.)

Defendant argues the first seven words we have italicized indicate that the only pedestrian entitled to the right of way at an intersection controlled by traffic signals is the one caught in the intersection when the light changes to red against him, and a pedestrian who enters the intersection with the same light that lets in a motorist who expects to turn has no preference over such motorist. According to this argument plaintiff would have the right of way only over a motorist coming from the north or south on Twelfth who entered the intersection when the light facing

plaintiff turned red and the light facing such motorist turned green.

The first italicized clause was doubtless intended to give the right of way to other vehicles and pedestrians lawfully in the intersection when the light changes against them so they may clear the intersection without being subjected to the dangers of cross traffic. However, the last sentence in section 321.257(1), quoted above, which defendant ignores, seems clearly to give a pedestrian who enters an intersection at a crosswalk, with a green light facing him, the right of way over a motorist who turns across the pedestrian's path. The legislature could hardly have intended that such a pedestrian may proceed across the roadway if a motorist has an equal right to turn into the pedestrian's path at the risk of possible injury to him.

Section 321.327 states: "Where traffic-control signals are not in place or in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within any * * * crosswalk at an intersection, except as otherwise provided in this chapter."

Clearly under 321.327 a pedestrian in a crosswalk at an intersection where traffic signals are not operating has the right of way over motorists. (None of the exceptions applies here.) See Andrew v. Clements, 242 Iowa 144, 150, 45 N.W.2d 861, 864. It is not probable the legislature intended a pedestrian who enters a crosswalk with a green light facing him has a lesser right of preference than one who enters where no signal is operating.

Our conclusion accords with what we say in State v. Paul, 242 Iowa 853, 858, 48 N.W.2d 309, 311, where the factual situation is the same. A pedestrian was crossing an intersection controlled by a signal, with a green light facing him, when a motorist entered on the same light from the opposite direction, made a left turn and collided with the pedestrian. After quoting section 321.257(1) we say, "he had the right of way and it was the duty of defendant in driving his car to have yielded such right. His failure to do so was a violation of said statute."

II. The second ground of defendant's exception to instruction 8 is that it should have stated plaintiff relinquished her right of way if she stopped with the apparent intention of permitting defendant to proceed. It is doubtless true that a

pedestrian entitled to the right of way may relinquish it by some unequivocal act. See in this connection Miller v. Utah Light & Traction Co., 96 Utah 369, 86 P.2d 37, 38, 39; Guillory v. United Gas Public Service Co., La. App., 148 So. 274, 277, 278. However, we think the evidence here would not warrant a finding plaintiff relinquished in favor of defendant the right of way to which she was entitled and that the second ground of defendant's exception to instruction 8 does not entitle defendant to a reversal.

Sole basis for this claim of error is testimony of defendant and his witness, Klinger, that plaintiff momentarily stopped after she had started across the intersection, defendant stopped about the same time, they both started again at the same time, practically, and the collision occurred. Defendant does not say he believed plaintiff was stopping to permit him to pass nor that he started up in reliance thereon, nor is it to be fairly inferred plaintiff stopped with the actual or apparent intention of permitting defendant to proceed. A finding that a pedestrian relinquished her right of way should not be based on such evidence as we have here.

Defendant cites no authority that sustains this claim of error. Consolidated Gas, Elec. L. & P. Co. v. Rudiger, 151 Md. 226, 232, 235, 134 A. 326, 329, 330, fully supports our conclusion. There defendant's chauffeur gave this testimony, which is absent here:

" 'Mr. Rudiger looked and walked out into the road. He stood there and looked at me as if he was deliberately standing there to let me pass. * * * After I got close to Mr. Rudiger I thought he was going to let me pass, and I paid attention to machines that might shoot out on the road on the right. I forgot about Mr. Rudiger and when I looked around again he was right in front of me.' "

Defendant's requested instruction (prayer) stated: " 'and if the jury further find that the plaintiff stopped at a point at or near the center of York Road and looked in the direction of the defendant's automobile, then the chauffeur driving said automobile had the right to assume that the plaintiff would give him the right of way * * *.' "

In holding the request was properly refused the court says (at page 237 of 151 Md., page 331 of 134 A.) :

*"It can hardly be assumed, from the mere fact that the plaintiff, while in the center of the road, stopped and looked in the direction of the automobile, that he would there stop and permit the automobile to pass.* If not his duty to look while in the center of the road, it was certainly the exercise of commendable caution and care for him to do so, and because he stopped while looking, that would not warrant the assumption on the part of the chauffeur \* \* \* the plaintiff was to remain where he was without moving until he had passed. \* \* \* The court, we think, committed no error in its refusal to grant this prayer." (Italics ours.)

III. Defendant excepted to the submission of the charge he was negligent in failing to give warning, on the ground no warning was necessary under the circumstances and failure to warn could not be the proximate cause. It is argued that a warning would have served no purpose since plaintiff testified she saw defendant's car approaching. It is true that one who knows all of which a warning could have informed him may not complain that none was given. See Sandell v. Des Moines City R. Co., 184 Iowa 525, 532, 168 N.W. 226; Wilkinson v. Queal Lbr. Co., 203 Iowa 476, 479, 212 N.W. 682; Elliott v. Des Moines R. Co., 223 Iowa 46, 50, 271 N.W. 506.

We hold it was proper to submit this ground of negligence. There is no complaint against the instruction which states the law relating thereto. The jury was simply told it was a motorist's duty to give warning to avoid possible danger to pedestrians if the exercise of reasonable care so requires. We cannot say as a matter of law plaintiff knew all she would have known if defendant had sounded his horn. Such a signal would have warned plaintiff that defendant would or might continue to make his left turn and would not or might not accord plaintiff the right of way.

All that appears is that plaintiff knew defendant was starting to turn, but she says she thought he would slow up for her and there was plenty of space behind her. Plaintiff had a right to believe she would be accorded the right of way until

she knew, or in the exercise of reasonable care should have known, otherwise. Dorman v. Service Sales Co., 241 Iowa 1182, 1184, 44 N.W.2d 716, 717, and citations; Dougherty v. McFee, 221 Iowa 391, 395, 396, 265 N.W. 176; Orth v. Gregg, 217 Iowa 516, 519, 520, 250 N.W. 113.

Mere knowledge defendant had started a left turn did not necessarily charge plaintiff with notice she would not be accorded the right of way. The jury could properly find a warning would have imparted further knowledge to her that she did not have and with which she was not charged. In support of our conclusion see Roberts v. Hennessey, 191 Iowa 86, 101–103, 181 N.W 798; Handlon v. Henshaw, 206 Iowa 771, 773, 221 N.W. 489; O'Hara v. Chaplin, 211 Iowa 404, 411, 233 N.W. 516; Orth v. Gregg, supra, 217 Iowa 516, 519, 520, 250 N.W. 113. See also Lawson v. Fordyce, 234 Iowa 632, 637–640, 12 N.W.2d 301, 304, 305.

What we have said also disposes of defendant's claim of error in the refusal of his requested instruction "F" which states that since plaintiff testified she saw defendant's car approach, failure to sound his horn could not be the proximate cause of the accident.

 IV. Defendant objected to the submission of plaintiff's charge he was negligent in failing to have his car under control on the ground there is no evidence from which a jury could so find. The court instructed, without objection, that an automobile is under control if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. This accords with frequent pronouncements by us. See Lynes v. Schmolt, 241 Iowa 1303, 1306, 45 N.W.2d 221, 222, and citations; Clayton v. McIlrath, 241 Iowa 1162, 1169, 44 N.W.2d 741, 745.

We feel the issue of lack of control was properly submitted to the jury. We cannot agree it conclusively appears defendant had his car under control. We have frequently pointed out that the question of control of a motor vehicle largely depends upon the surrounding circumstances of each case and is ordinarily for the jury. See Rogers v. Jefferson, 226 Iowa 1047, 1051, 285

N.W. 701, and citations; Dorman v. Service Sales Co., supra, 241 Iowa 1182, 1184, 44 N.W.2d 716, 717.

When plaintiff was asked on cross-examination if she saw defendant turn north before she was struck she said it came so fast she did not know. The driver of a car facing south on Twelfth Street waiting for the light to turn green testifies defendant was not going very fast, the car did not go eight feet after it bumped plaintiff, she was pushed north some, "he bumped her over toward my car." A friend of defendant who was standing at the northwest corner of the intersection says defendant "was going five or ten miles an hour at the most.".

As previously stated, there is evidence plaintiff had passed the center of Twelfth Street when she was struck by defendant's left front fender. There was plenty of room for defendant to have gone to plaintiff's rear (east). The fact that plaintiff had the right of way is a circumstance bearing on the issue of lack of control.

In Altfilisch v. Wessel, 208 Iowa 361, 367, 225 N.W. 862, 864, a pedestrian was struck on a crosswalk by a car making a left turn. We held it was proper to submit to the jury the issue of defendant's negligence in failing to keep a proper lookout for pedestrians, to lessen his speed and have it under control, although the only direct evidence of speed fixed it at about six miles per hour, the car was stopped in five or six feet and plaintiff "was not thrown any distance, but was knocked down on her hands and knees * * *." The testimony here is stronger than in the cited case.

V. Instruction 10 told the jury a motorist is under a duty to keep a proper lookout for other automobiles and pedestrians rightfully using the streets and involves the care of an ordinarily careful and prudent person under the circumstances. Defendant excepted to the instruction because it failed to state that a constant lookout was not required and it is sufficient if a motorist keeps a reasonable lookout at reasonable times. We think the instruction was not error in the respect claimed.

It appears from defendant's own testimony he saw plaintiff start into the intersection, he then looked over at the car coming from the north on Twelfth Street and saw it stopped for the intersection in obedience to the red light—"When I looked back,

Mrs. Arenson was right in front of me." It seems defendant's real objection to instruction 10 is that it does not indirectly call attention to the evidence of the approach of the southbound car and impliedly approve defendant's diverting his attention toward it. This would not have been proper. See in this connection Kallansrud v. Libbey, 234 Iowa 700, 706, 707, 13 N.W.2d 684, 687. Instruction 10 does call attention to a motorist's duty to keep a lookout for other automobiles as well as for pedestrians.

While instruction 10 is not exactly correct grammatically, the jury could hardly fail to understand that defendant's only duty as to lookout was to exercise the care of an ordinarily prudent person under the circumstances. "Of course, defendant was bound to exercise reasonable care to maintain a lookout." Hampton v. Burrell, 236 Iowa 79, 82, 17 N.W.2d 110, 113. See also Hutchins v. LaBarre, 242 Iowa 515, 528, 47 N.W.2d 269, 276, and citations. Instruction 10 did not give the jury an exaggerated idea of defendant's duty. It was as favorable to him as he was entitled to. It was not necessary to further tell the jury defendant was not under the duty to keep a constant lookout.

VI. Instruction 12, on the measure of recovery, contains the statement, "if you allow anything for future damages for pain and suffering, the present worth of such damages should be allowed and not the aggregate amount." Defendant objected to this statement on the ground there was neither pleading nor evidence to support it. There is no other complaint against the instruction.

Plaintiff's petition does not expressly claim damages for future pain and suffering. It does allege her arm was fractured, she was otherwise severely injured, suffered mental and physical pain and shock, was hospitalized, said injuries are permanent and she sustained damages of $2825. After the jury was empaneled, about twenty months after the accident, plaintiff amended her petition by alleging that since it was filed she had had additional expense, suffered additional intense pain and mental anguish which was not known when the petition was filed. Further damages of $2000 were claimed in the amendment. Neither the petition nor amendment claims any specific amount for any element of damage.

There is evidence that both plaintiff's wrists were broken

and placed in casts for nearly two months, her back was injured and she had numerous small lacerations and bruises over her body. She suffered considerable pain, mostly in the wrists, arms and legs. Her back pained her for some time *and still does a little. She was still suffering with the wrists* in the area where the bones were broken. Her wrists and back were all right before the accident.

We think plaintiff's pleadings and evidence were both sufficient to warrant recovery for future pain and suffering. An express allegation of future pain and suffering is not required where it is alleged the injury is permanent, it is such that future pain is reasonably certain to follow and there is a general allegation of damages. Where, however, the allegations of the injury are not such as to indicate it is likely to cause future pain and suffering, or any such inference is negatived by allegations of the several elements of damage, future pain and suffering should not be taken into consideration.

Our conclusion finds support in Schwaller v. McFarland, 228 Iowa 405, 412, 291 N.W. 852; Keller v. Dodds, 224 Iowa 935, 952–954, 277 N.W. 467; Palmer v. City of Waterloo, 138 Iowa 296, 115 N.W. 1017; Evans v. Elwood, 123 Iowa 92, 96, 98 N.W. 584, 585; 25 C. J. S., Damages, section 135, page 767. See also Breen v. Iowa Central R. Co., 159 Iowa 537, 542, 141 N.W. 410; annotation 81 A. L. R. 423, 436; 15 Am. Jur., Damages, section 312.

Evans v. Elwood, supra, states: "There is no rule of pleading which requires a plaintiff in a personal injury case to allege in express and specific terms that he will undergo future pain and suffering on account of such injury. If he alleges and proves such a physical condition resulting from the alleged wrong that future suffering is likely to follow as a natural sequence, he is entitled to have that element of damage submitted to the jury." (Citations.)

While no expert testifies there would be pain and suffering in the future there is evidence plaintiff was seriously injured and was still suffering from her injuries at the time of trial. Worez v. Des Moines City Ry. Co., 175 Iowa 1, 27, 28, 156 N.W. 867, 876, states: "Where the evidence tends to show that plaintiff has suffered severe pain right up to the time of the trial, and

that she had not then yet fully recovered from the injury, future pain and suffering may rightly be submitted. Bruce v. Town of Eldon, 122 Iowa [92], at 93." See also authorities cited last above and Danner v. Cooper, 215 Iowa 1354, 1363, 1364, 246 N.W. 223.

VII. There is no merit to the claim the award of $2000 is so excessive as to warrant interference by us. Plaintiff's injuries are sufficiently stated in the preceding Division VI. Her cash expenditures, largely for hospital and doctors because of her injuries, total $325. We have discussed the excessiveness of verdicts in a number of recent decisions. The latest is Elings v. Ted McGrevey, Inc., 243 Iowa 815, 53 N.W.2d 882, which cites many of our previous opinions.

VIII. Also without merit is the contention it was error to permit plaintiff after the jury was empaneled to amend her petition (as referred to in Division VI hereof) by amplifying her claim for damages. No abuse of discretion appears in permitting the amendment. Further, the verdict is much less than the amount sought in the original petition and there is no showing of prejudice. See rule 88, Rules of Civil Procedure; Palmer v. City of Waterloo, supra, 138 Iowa 296, 298, 115 N.W. 1017; Terpstra v. Schinkel, 235 Iowa 547, 552, 17 N.W.2d 106, 109; Elson v. Nickles, 240 Iowa 292, 294, 36 N.W.2d 343, 344, and citations; A. C. Nelsen Auto Sales, Inc., v. Turner, 241 Iowa 927, 931, 44 N.W.2d 36, 38.—Affirmed.

MULRONEY, C.J., and BLISS, OLIVER, WENNERSTRUM, SMITH, MANTZ, and HAYS, JJ., concur.