# IN THE COURT OF APPEALS OF IOWA

No. 17-1270
Filed October 24, 2018

**WENDY HOLST,**
        Plaintiff-Appellant/Cross-Appellee,

**vs.**

**MICHAEL STAPLETON and MANSUR TRUCKING, INC.,**
**a Wisconsin Corporation,**
        Defendants-Appellees/Cross-Appellants.
_____

        Appeal from the Iowa District Court for Scott County, John D. Telleen,

Judge.


        Plaintiff appeals the district court's decision granting defendants' motion for

judgment notwithstanding the verdict on the issue of future damages.  Defendants

cross-appeal the court's denial of the motion as to certain past medical expenses.

**AFFIRMED ON THE APPEAL AND THE CROSS-APPEAL.**


        Robert T. Rosenstiel and JohnPatrick Brown of Winstein, Kavensky &

Cunningham, LLC, Rock Island, Illinois, for appellant.

        Zachary J. Hermsen and Bernard L. Spaeth Jr. of Whitfield & Eddy, PLC,

Des Moines, for appellees.


        Heard by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Wendy Holst appeals the district court's decision granting defendants' motion for judgment notwithstanding the verdict on the issue of future damages. Michael Stapleton and Mansur Trucking, Inc., cross-appeal the court's denial of the motion as to certain past medical expenses. We find Holst did not present sufficient medical evidence to support a claim for future pain and suffering or future loss of function or sufficient evidence to come within the exception to this requirement, and we affirm the court's grant of judgment notwithstanding the verdict on this ground. On the cross-appeal, we conclude the district court did not err in finding there was substantial evidence of causation, so the issue of past medical expenses was properly submitted to the jury and the court did not err in denying defendants' motion for judgment notwithstanding the verdict on this ground. We affirm the appeal and cross-appeal.

## I.    Background Facts & Proceedings

On January 13, 2015, Holst was driving on the on-ramp to the Centennial Bridge going from Davenport, Iowa, to Rock Island, Illinois, when she was rear-ended by a hit-and-run driver, which caused some scratches to her car. She testified she did not feel injured from the accident. Holst called 911 and stated she was told to remain where she was until police officers arrived. She parked her car as far to the right side of the road as she could and turned on her flashers.

While Holst was waiting for police officers to arrive, Stapleton, driving a tractor–trailer owned by Mansur Trucking, drove onto the on-ramp. Stapleton attempted to drive around Holst's vehicle but struck it. Holst testified the collision caused "a big jolt." There was damage to the rear driver's side of Holst's vehicle.

Holst stated she did not feel any injuries immediately after the collision but by the next day she had pain and stiffness.

Holst saw Ben Kolner, a physician's assistant, on January 16 and was evaluated for pain in her neck, back, hip, and shoulder. She was "tearful and upset" during the evaluation. Kolner told Holst she could "take a little more" of her pre-existing prescriptions for Xanax and Tramadol, gave her a prescription for a muscle relaxant, and told her she could see a chiropractor if she wanted.

Holst had previously been treated for neck and back problems and had a history of anxiety. In 2004, she was in a car accident and sought treatment for back pain, neck pain, neck stiffness, arm and shoulder pain, and headaches. In 2006, Holst was rear-ended, causing neck pain, back pain, back stiffness, and head pain. In 2008, Holst began taking medication for anxiety and depression. In 2012, she fell off a ladder, causing back pain. Holst received treatment for back and neck pain from 2006 through November 2014.

After the accident in January 2015, Holst continued to receive treatment for hip, back, and neck pain. She had an MRI in May 2015; Dr. Timothy Millea found "age-appropriate degenerative changes" in her spine. Dr. Millea diagnosed Holst with bursitis in her right hip. On June 8, 2015, Holst told her primary care physician, Dr. Jennifer Aanestad, the pain in her right hip had not resolved and this was different than her back pain prior to the accident. Holst had physical therapy for her hip from June to August. Holst periodically received an injection for hip pain from Dr. Maruti Kari of the QCB Pain Clinic.

On December 17, 2015, Holst filed a petition against Stapleton and Mansur Trucking, claiming their negligence caused her damages. The case proceeded to

a trial on May 1, 2017. Holst presented the deposition testimony of Dr. Aanestad, as follows:

> Q. Based on your education, training, experience, treatment of Ms. Holst and examination of her on [February 2, 2015,] and the history that she gave you, did you formulate a diagnosis at that time? A. I did.
> Q. What was it? A. Cervical strain, low-back pain, anxiety.
> Q. And do you have an opinion, within a reasonable degree of medical certainty, whether those conditions were caused or aggravated by the motor vehicle collision? A. Yes. I think they were aggravated by the motor vehicle collision, yes.

Dr. Aanestad examined Holst on June 8, 2015, and diagnosed her with chronic right hip pain. In the deposition she testified:

> Q. Do you have an opinion, within a reasonable degree of medical certainty, whether her hip pain as of that day [June 8, 2015] was caused or aggravated by the motor vehicle collision with the semi? A. I have to say she had not complained of hip pain prior, so I would have to assume yes, because that had been an issue since.

When asked if she was "currently treating [Holst] for any conditions that were aggravated by the collision with the semi," Dr. Aanestad stated, "I do," then discussed Holst's anxiety, which she stated was "worsened after the accident," and pain management, for which she saw Dr. Kari.

Dr. Aanestad was asked, "Do you think she suffered a permanent injury as a result of the collision with the semi," and she stated, "I don't know that I can comment on that." The deposition continued:

> Q. What treatment do you recommend going forward? A. I think she needs to continue with physical therapy intermittently. That might be something. The pain clinic, I think injections have maybe decreased in frequency, but that might be something that will intermittently need to continue depending on her response to treatment.
> At this juncture it doesn't look like anything surgical, so I don't know that that's something we need to be concerned about.

Dr. Aanestad also testified:

> Q. Are you able to say, to a reasonable degree of medical certainty, that the accident caused this hip pain? A. With certainty? No, I can't say with certainty.
> Q. Okay. Do you think the accident caused this hip pain? A. I don't know.

Defendants' medical expert, Dr. Ricky Garrels, testified he reviewed Holst's medical records and did not believe, to a reasonable degree of medical certainty, the collision caused Holst any back, neck, or hip pain. Dr. Garrels also testified he did not believe the accident caused Holst's problems with anxiety.

At the close of the evidence, defendants made a motion for a directed verdict for all future damages, claiming Holst had not presented substantial evidence to support an award of future damages. The district court ruled:

> Over the lunch hour I thought about the Defendants' motion for directed verdict with regard to future pain and suffering and future loss of function of the mind and body. It's a very, very close question and Plaintiff's evidence is very thin to say the least but I have decided, of course, under the applicable standard I need to afford the nonmoving party every legitimate inference from the evidence, I've decided to deny Defendants' motion. Dr. Aanestad—frankly I'll tell you right up front, I'm not sure I'm making the right decision here but—especially in view of the fact that Dr. Aanestad said that she couldn't comment on whether or not she suffered a permanent injury but her deposition testimony was somewhat equivocal in that she did testify that she was still treating her for conditions that were aggravated by the collision.
> She did testify that she referred her to a pain clinic, it was reasonable for her to start treatment with the pain clinic. She did testify that she felt that she's currently treating her for the anxiety that was—that she believed was aggravated from the collision and she did say it was an ongoing issue and it's extraordinarily thin and I'm not sure I'm making the right decision, but at this point I'll let the jury consider this claim.

The jury returned a verdict finding Stapleton was 100% at fault in the collision and his fault was a proximate cause of damages to Holst. The jury

awarded Holst damages of $10,275.31 for property damage; $15,607.09 for past medical expenses; $25,000 for past pain and suffering; $25,000 for past loss of function of the mind and body; $75,000 for present value of future loss of function of the mind and body; and $75,000 for present value of future physical and mental pain and suffering. The total amount of damages was $225,882.40.

Defendants filed a motion for judgment notwithstanding the verdict, claiming there was not sufficient evidence to support the award of damages for future pain and suffering, future loss of function, or past medical expenses incurred after May 7, 2015. Holst resisted the motion, stating the court should permit the jury's verdict to stand as there was substantial evidence in the record to support the verdict. Defendants replied to the resistance.

The district court granted the motion for judgment notwithstanding the verdict on the issue of future damages, finding:

> Plaintiff failed to meet her burden of producing substantial evidence within a reasonable degree of medical certainty to support her claims for future pain and suffering, future loss of function or the causal connection of those alleged injuries to the accident at issue. Holst failed to produce testimony from her own treating physician or any other medical expert to support her claim for future damages.

The court denied the motion with respect to past medical expenses, finding defendants "did not successfully delineate at trial and have not successfully delineated in post-trial motions which medical treatments after May 7, 2015, were or were not related to hip pain." Based on the court's ruling, the total award of damages to Holst was reduced to $75,882.40. Holst now appeals.

## II.     Standard of Review

We review a district court's ruling on a motion for judgment notwithstanding the verdict for correction of errors at law.  *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 460 (Iowa 2017).  "Our role is to decide whether there was sufficient evidence to justify submitting the case to the jury when viewing the evidence in the light most favorable to the nonmoving party."  *Smith v. Iowa State Univ.*, 851 N.W.2d 1, 18 (Iowa 2014).  "Evidence is substantial if a jury could reasonably infer a fact from the evidence."  *Winger v. CM Holdings, LLC*, 881 N.W.2d 433, 445 (Iowa 2016).  "We review the evidence in the light most favorable to the nonmoving party."  *Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 649 (Iowa 2016).

## III.     Future Damages

Holst claims the district court erred by granting the defendants' motion for judgment notwithstanding the verdict on the issue of damages for future pain and suffering and future loss of function.

In general, "[e]xpert testimony is often necessary to establish future physical pain and suffering."  *DeBurkarte v. Louvar*, 393 N.W.2d 131, 140 (Iowa 1986).  "It is well known that a showing of reasonable medical certainty is a predicate for recovery for future physical consequences."  *Wilber v. Owens-Corning Fiberglas Corp.*, 476 N.W.2d 74, 77 (Iowa 1991).

The district court found Holst did not provide expert testimony to show with a reasonable degree of medical certainty she would suffer future pain and suffering or loss of function as a result of the collision.  When Dr. Aanestad was asked, "Do you think she suffered a permanent injury as a result of the collision with the semi,"

she answered, "I don't know that I can comment on that." Also, when discussing future medical treatment, Dr. Aanestad testified Holst "might" need to continue with physical therapy and "might" need to continue with the pain clinic. Dr. Aanestad testified Holst had "some fluctuations from an anxiety standpoint." We find no error in the court's conclusion Dr. Aanestad did not testify with a reasonable degree of medical certainty Holst would have future damages as a result of the accident with Stapleton.

There is an exception to the general rule requiring expert testimony for future medical damages. "In Iowa, when pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony." *Mabrier v. A.M. Servicing Corp.*, 161 N.W.2d 180, 183 (Iowa 1968); *see also DeBurkarte*, 393 N.W.2d at 140. The Iowa Supreme Court has stated:

> An express allegation of future pain and suffering is not required where it is alleged the injury is permanent, it is such that future pain is reasonably certain to follow and there is a general allegation of damages. Where, however, the allegations of the injury are not such as to indicate it is likely to cause future pain and suffering, or any such inference is negatived by allegations of the several elements of damage, future pain and suffering should not be taken into consideration.
> . . . .
> While no expert testifies there would be pain and suffering in the future there is evidence plaintiff was seriously injured and was still suffering from her injuries at the time of trial. . . . "Where the evidence tends to show that plaintiff has suffered severe pain right up to the time of the trial, and that she had not then yet fully recovered from the injury, future pain and suffering may rightly be submitted."

*Arenson v. Butterworth*, 54 N.W.2d 557, 563 (Iowa 1952) (citation omitted); *see also Franken v. City of Sioux Center*, 272 N.W.2d 422, 429 (Iowa 1978).

As set out in *Arenson*, the exception applies when a plaintiff has a permanent, severe, serious injury and the injury is one that will likely cause future pain and suffering. 54 N.W.2d at 563. In order to prove such an injury, "[t]he mere statement by the plaintiff that she still suffers pain is not sufficient per se to warrant a finding that there will be any future pain or physical suffering because of her injuries." *Daniels v. Bloomquist,* 138 N.W.2d 868, 873 (Iowa 1965). Where "the symptoms from which personal injury may be inferred are subjective only," and plaintiff presents no medical testimony to establish future pain and suffering or permanent injury are "reasonably certain," the trial court need not instruct the jury on this element of damages. *Id.*

Dr. Aanestad did not testify Holst suffered a permanent injury as a result of the collision with the semi instead stating, "I don't know that I can comment on that." On the issue of the severity and seriousness of Holst's injuries, the district court found:

> The court finds Holst's injuries are not so severe as to justify applying the exception to the general rule requiring expert medical testimony to support future damages. There was scant objective evidence at trial that Holst suffered any injuries due to the accident with defendant. There was no fracture, swelling, scratches, cuts or bruises. There was some muscle spasm observed shortly after the accident.

The court concluded, "Plaintiff's damages here do not come close to the level of severity necessary to dispense with the requirement for expert medical testimony." Also, because there was not sufficient evidence to show Holst's injuries were permanent, severe, and serious, there was not sufficient evidence her injuries were "such that future pain is reasonably certain to follow." *See Arenson*, 54 N.W.2d at 563. We conclude the district court did not err in its conclusion Holst did not

present sufficient evidence to show her claim for future damages came within the exception to the requirement to show with a reasonable degree of medical certainty she would suffer future pain and suffering or loss of function as a result of the collision.

In general, the court should not substitute its judgment for the jury's verdict as to the amount of damages. *See Fredrickson v. Heline*, 106 N.W.2d 74, 77 (Iowa 1960) (noting the determination of damages is primarily for the jury and ordinarily a court should not substitute its judgment for that of the jury). On the issue of damages, as "the jury is a more appropriate judge of questions of fact, we will not disturb its findings unless they lack substantial support in the record." *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 540 (Iowa 1996). Where there is not substantial evidence in the record to support each element of a claim, however, a motion for judgment notwithstanding the verdict should be granted. *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 734 (Iowa 2009).

Holst did not present sufficient medical evidence to support a claim for future pain and suffering or future loss of function or sufficient evidence to come within the exception to this requirement, and we affirm the court's grant of judgment notwithstanding the verdict on this ground. There was not sufficient evidence to justify submitting the issue of future damages to the jury, even when viewing the evidence in the light most favorable to Holst. *See Smith*, 851 N.W.2d at 18.

The district court additionally found Holst had not presented sufficient evidence to show the collision was the cause of future pain and suffering or loss of function. Due to our conclusions on the issue of the sufficiency of the medical

testimony supporting the claim for future damages, we do not further address the issue of causation evidence in relation to future damages.

## IV.     Past Medical Expenses

On cross-appeal, defendants claim the district court should have granted their motion for judgment notwithstanding the verdict on the issue of Holst's medical expenses incurred after May 7, 2015. Defendants state all of Holst's medical bills after this date relate to treatment for her right hip and she failed to prove the problems with her hip were caused by the collision with Stapleton.

A plaintiff has the burden of proving a defendant's negligence caused the plaintiff's injury by a preponderance of the evidence. *Crow v. Simpson*, 871 N.W.2d 98, 106 (Iowa 2015). "A party's conduct is the proximate cause of a plaintiff's injury 'when it is a substantial factor in producing damage and when the damage would not have happened except for the conduct.'" *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 75 (Iowa 2018) (citation omitted). Similarly, "[i]f the plaintiff would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm." *Berte v. Bode*, 692 N.W.2d 368, 372 (Iowa 2005).

In her deposition, Dr. Aanestad testified,

> Q. And do you have an opinion, within a reasonable degree of medical certainty, whether those conditions were caused or aggravated by the motor vehicle collision? A. Yes. I think they were aggravated by the motor vehicle collision, yes.

She also testified:

> Q. Do you have an opinion, within a reasonable degree of medical certainty, whether her hip pain as of that day [June 8, 2015] was caused or aggravated by the motor vehicle collision with the

semi?  A.  I have to say she had not complained of hip pain prior, so I would have to assume yes, because that had been an issue since.

These statements provide substantial evidence to support a finding Holst's injuries, resulting in past medical expenses, were caused by the collision with Stapleton.

We recognize Dr. Aanestad also made some conflicting statements, as follows:

> Q.  Are you able to say, to a reasonable degree of medical certainty, that the accident caused this hip pain?  A.  With certainty? No, I can't say with certainty.
> Q.  Okay.  Do you think the accident caused this hip pain?  A. I don't know.

"Causation is ordinarily a jury question."  *Garr v. City of Ottumwa*, 846 N.W.2d 865, 870 (Iowa 2014).  "Because the issues of negligence and causation are questions for the jury, we will decide these issues as a matter of law only in exceptional cases."  *Crow*, 871 N.W.2d at 105.  Where evidence is conflicting, it is a jury's duty to evaluate the evidence.  *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 764 (Iowa 1999).  "[T]he jury is free to accept or reject any testimony, including uncontroverted expert testimony."  *Crow*, 871 N.W.2d at 105.

We conclude the district court did not err in finding there was substantial evidence of causation, so the issue of past medical expenses should be submitted to the jury.  The court did not err in denying defendants' motion for judgment notwithstanding the verdict on this ground.

We affirm the district court's decision on the appeal and the cross-appeal.

**AFFIRMED ON THE APPEAL AND THE CROSS-APPEAL.**